**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO**

| | |
|---|---|
| JOSE GABRIEL PEREZ-SOLER, ANA AWILDA SOLER-NIEVES, JOSE ISMAEL PEREZ-NIEVES, Plaintiffs, <br><br> v. <br><br> JOSEPH GONZÁLEZ-FALCON, ANTONIO LÓPEZ-FIGUEROA, PPR SUPERVISOR 1, PPR SUPERVISOR 2, PPR SUPERVISOR 3, PPR SUPERVISOR 4, PPR SUPERVISOR 5, PPR SUPERVISOR 6, PPR SUPERVISOR 7, PPR SUPERVISOR 8, PPR SUPERVISOR 9, PPR SUPERVISOR 10, JOSE RAMÍREZ-RAMOS, JAIME COSME-OLIVER, LUZ M. LLANOS-ARROYO, SHEILA CURET-ALONSO, JOSE ROSADO-MARCANO, AGUSTÍN RODRÍGUEZ-VILLOT, STEVEN SANTANA-ROSARIO, ZAHIRA LÓPEZ-NAVARRO, JORGE A. GONZÁLEZ- GONZÁLEZ, MARILYN DE JESÚS-DIAZ, JOHN DOE 1-5, Defendants. | CIVIL NO.  26-1415 (    ) <br><br> CIVIL ACTION <br><br> **JURY TRIAL DEMANDED** |

**COMPLAINT**

**TO THE HONORABLE COURT:**

**COME NOW** the Plaintiffs, represented by the undersigned counsel and very respectfully

ALLEGE, SET FORTH and PRAY:

### I.    NATURE OF THE CASE

1. This action is brought by Jose Gabriel Perez-Soler ("Jose"), resident of Puerto Rico, and

    his parents, seeking redress for the damages that resulted when he visited a state police

<u>Pérez-Soler, et al., v. Joseph González-Falcón</u>, et al., civil #26-1415

station to report that his car had been stolen and the officer, who was supposed to take the complaint, assaulted him, after which two other officers shot their taser guns at him discharging lethal amounts of electricity on Jose.

2. Defendants' actions and/or omissions are the proximate cause of the physical, emotional, psychological and economic damages suffered by the Plaintiffs.

3. Plaintiffs request this Honorable Court for compensatory and punitive damages, as well as equitable and declaratory relief and the other remedies provided by the applicable federal and local statutes, including attorney's fees, costs, litigation expenses, and interests.

## II.    JURISDICTION

4. This Court has jurisdiction over Plaintiffs' claims under 42 U.S.C. § 1983, pursuant to 28 U.S.C. § 1331 and § 1343.

5. Plaintiffs further invoke the supplemental jurisdiction of the Court pursuant to 28 U.S.C. § 1367, to hear and decide claims arising from the same nucleus of operative facts, that arise under the Constitution and laws of the Commonwealth of Puerto Rico, including Puerto Rico Law No. 17 of April 22, 1988. P.R. Laws Ann. Tit. 29, section 155 *et seq*; Article 1536 of the Puerto Rico Civil Code of 2020 (31 L.P.R.A. § 10801) and Article 18 of the Puerto Rico Civil Code of 2020 (31 L.P.R.A. § 5337).

## III.    THE PARTIES

<u>Plaintiffs</u>

6. Plaintiff Jose Gabriel Perez-Soler ("José") is of legal age, single, employed, and resident of Puerto Rico.

7. Plaintiff Ana Awilda Soler-Nieves ("Soler-Nieves") is Jose's mother. She is of legal age and resident of Toa Alta, Puerto Rico.

<u>Pérez-Soler, et al., v. Joseph González-Falcón</u>, et al., civil #26-1415

8.  Plaintiff Jose Ismael Perez-Nieves ("Perez-Nieves") is Jose's father. He is of legal age, married and resident of Toa Alta, Puerto Rico.

<u>Defendants</u>

9.  Defendant Joseph González-Falcón ("González-Falcón") is the Superintendent of the Puerto Rico Police ("PPR"). Defendant González-Falcón is responsible for the selection, training, supervision and discipline of the officers of the PPR.

10. Defendant Antonio López-Figueroa ("López-Figueroa") was the Superintendent of the Puerto Rico Police ("PPR") before Defendant González, and as such, he was responsible for the selection, training, supervision and discipline of the officers of the PPR before Defendant González.

11. Defendants Jose Ramírez-Ramos ("Ramírez-Ramos"), Auxiliary Commander in charge of Professional Liability, Jaime Cosme-Oliver ("Cosme-Oliver"), Director of the Use of Force Investigative Division, Luz M. Llanos-Arroyo ("Llanos-Arroyo"), Lieutenant in charge of the shift, Sheila Curet-Alonso ("Curet-Alonso"), Sergeant in charge of investigating the incident, and Jose J. Rosado-Marcano ("Rosado-Marcano"), Sergeant in charge of the shift, were responsible for selection, training, discipline and/or supervision of the Defendant PPR Officers.

12. Defendants PPR Supervisor 1, PPR Supervisor 2, PPR Supervisor 3, PPR Supervisor 4, PPR Supervisor 5, PPR Supervisor 6, PPR Supervisor 7, PPR Supervisor 8, PPR Supervisor 9 and PPR Supervisor 10, are the fictitious names of the supervisory personnel responsible for the selection, training, supervision and discipline of the officers of the PPR. They are, also, liable for the damages suffered by the plaintiffs. Their identities are unknown at the moment.

Pérez-Soler, et al., v. Joseph González-Falcón, et al., civil #26-1415

13. Defendants Gónzalez-Falcón, López-Figueroa, Ramírez-Ramos, Cosme-Oliver, Llanos-Arroyo, Curet-Alonso, Rosado-Marcano, PPR Supervisor 1, PPR Supervisor 2, PPR Supervisor 3, PPR Supervisor 4, PPR Supervisor 5, PPR Supervisor 6, PPR Supervisor 7, PPR Supervisor 8, PPR Supervisor 9 and PPR Supervisor 10, will be collectively referred to as the "PPR Supervisory Defendants".

14. Defendant Agustín Rodríguez-Villot ("Rodríguez-Villot") is the agent that instead of taking Jose's complaint, assaulted Jose.

15. Defendant Zahira López-Navarro ("López-Navarro") is the police officers that assisted Rodríguez in assaulting Jose.

16. Defendant Steven Santana-Rosario ("Santana-Rosario") is a police officer that assisted Rodríguez in assaulting Jose and getting officers González-González and De-Jesús to use their taser guns.

17. Defendants Jorge A. González-González ("González-González") and Marilyn De-Jesús-Diaz ("De-Jesús-Diaz"), are the officers that shot Jose with their taser guns.

18. PPR Officer 1, PPR Officer 2, PPR Officer 3, PPR Officer 4, PPR Officer 5, are the fictitious names of other PPR police officers that participated in the events. Their identities are unknown at the moment.

19. Defendants Rodríguez-Villot, Santana-Rosario, López-Navarro, González-González, De-Jesús-Diaz, PPR Officer 1, PPR Officer 2, PPR Officer 3, PPR Officer 4, PPR Officer 5, will be collectively referred to as the "PPR Officer Defendants".

20. John Doe 1, John Doe 2, John Doe 3, John Doe 4 and John Doe 5, are persons whose identities are unknown to the plaintiffs who are also liable for the damages claimed by the plaintiffs.

4

Pérez-Soler, et al., v. Joseph González-Falcón, et al., civil #26-1415

## IV.    THE FACTS

21. By June 28th, 2025, the PPR Supervisory Defendants had established, or maintained, a custom of selecting officers that had a propensity for use of excessive force. Upon information and belief, the PPR Supervisory Defendants were not adequately screening, nor investigating candidates to become officers before selecting them. The failure to select officers, without screening for their propensity to use excessive force, places the citizens upon which the police officers intervene at risk of harm, in violation of the constitutional rights of every person.

22. By June 28th, 2025, the PPR Supervisory Defendants had not provided adequate training to their officers on the Use of Force, including the use of the taser guns. Upon information and belief, although the police officers were provided with target shooting practice, they were not adequately trained on the Use of Force, particularly when, or how, to use it and on the provision of access to emergency medical services to citizens against whom officers employ force. The failure to train officers, on the Use of Force, particularly the taser guns, and the subsequent access to emergency medical care to suspects, allows and encourages officers to use excessive force, and places the citizens upon which the police officers intervene at risk of harm, in violation of the constitutional rights of every person.

23. By June 28th, 2025, the PPR Supervisory Defendants had not provided adequate training to their officers on the use of the taser guns, particularly on the safe amount and frequency of the electric darts. This resulted in officers engaging in inadequate, dangerous and lethal use of the taser guns.

24. By June 28th, 2025, the PPR Supervisory Defendants had not provided adequate supervision to their officers on the field. Upon information and belief, the PPR Supervisory

5

Pérez-Soler, et al., v. Joseph González-Falcón, et al., civil #26-1415

Defendants allowed officers on the field to operate without supervision from supervisors, which is a basic component of police work, and particularly during interventions, in which taser guns, or deadly force, is used because supervisors can guide their officers and assure that the officers act correctly.

25. By June 28th, 2025, the PPR Supervisory Defendants had not implemented nationally accepted policies regarding the Use of Force by police officers. In particular, the PPR Supervisory Defendants did not implement an adequate Use of Force Review Board, nor the policy of requiring the preparation of reports on the use of force, including the use of the taser guns. These boards are committees that review the circumstances leading up to and during interventions in which police officers use any kind of force. The reports on the use of force are the basic tool used to review officers' conduct on the field. In other words, the PPR Supervisory Defendants were deliberately indifferent to citizen safety by not reviewing the Use of Force by their officers.

26. Upon information and belief, by June 28th, 2025, the PPR Officer Defendants, particularly Rodríguez-Villot, González-González and De-Jesús-Diaz, had previously engaged in uses of force, including the use of taser guns, that were not reviewed adequately. The failure to supervise officers, by reviewing their uses of force, allows and encourages officers to use excessive force, and places the citizens upon which the police officers intervene at risk of harm, in violation of the constitutional rights of every person.

27. By June 28th, 2025, the PPR Supervisory Defendants had established, or maintained, an inadequate disciplinary system, in which valid citizen complaints of use of excessive force by their officers were dismissed by the Supervisory Defendants without sanctioning the officers. Upon information and belief, the PPR Officer Defendants, particularly Rodríguez-

6

Pérez-Soler, et al., v. Joseph González-Falcón, et al., civil #26-1415

Villot, González-González and De-Jesús-Diaz, had previously engaged in uses of excessive force and were not adequately disciplined, leading the officers to believe that they could employ excessive force without any consequences. The failure to discipline officers, by dismissing valid citizen claims without sanctioning the officers, allows and encourages officers to use excessive force, and places the citizens upon which the police officers intervene at risk of harm, in violation of the constitutional rights of every person.

28. By June 28th, 2025, the PPR Supervisory Defendants were the policymakers for the PPR. They failed to establish and/or execute policies on: the training on the use of the taser guns; the review of the use of taser guns, and; the provision of access to emergency medical care to wounded suspects. In the alternative, they adopted the customs established by their predecessors.

29. By June 28th, 2025, the PPR Supervisory Defendants knew, or should have known, that their failure to establish such policies would result in field officers unreasonably utilizing using force, particularly the taser guns, and an increased risk to public safety. These failures increased the risk to public safety by allowing officers to use force that is not reasonable in light of the particular circumstances.

30. On June 28th, 2025, Jose called 911 because his car had been stolen from the place that he had parked it. He was told to visit the Hoare street PPR station or precinct to file a complaint. Jose did not know where the station was located but he walked in the direction that he was told. On the way to the station, he asked for directions and somebody walked him to the station and even entered the station with him.

31. Once inside the station, Defendant PPR Officer Rodríguez-Villot sat at one side of the desk, while Jose, and the person who walked him to the station, sat at the other side of the

Pérez-Soler, et al., v. Joseph González-Falcón, et al., civil #26-1415

desk.  Defendant PPR Officer Rodríguez-Villot, asked Jose for his license and Jose showed him his virtual license on his phone because he had left his wallet inside the stolen vehicle.

32. Instead of taking Jose's complaint of the theft of his car, Defendant PPR Officer Rodríguez-Villot, then, began questioning Jose, as if Jose had committed a crime, asking him if he had used marihuana, cocaine, or heroine. Jose was offended and began recording Defendant PPR Officer Rodríguez-Villot's conduct with his phone camera.

33. As shown by the video recording that Jose made with his cellular phone, Defendant PPR Officer Rodríguez-Villot became upset, punched the desk with his fists, grabbed a metal notebook case from the desk, got up and told Jose and his companion to get out of the station in a threatening manner. Jose turned the camera to his face and recorded himself calmly seating down and stating that he had come to the station to report the theft of his car and that Defendant PPR Officer Rodríguez-Villot did not want to take his complaint because Jose was recording him and that he would not leave until his complaint was taken.

34. Defendant PPR Officer Rodríguez-Villot walked out of the station and talked to police Defendant PPR Officer Santana-Rosario, who was armed with a taser gun which he kept in its holster and with Defendant PPR Officer López-Navarro.

35. Defendant PPR Officer Rodríguez-Villot kept shouting to Jose, and the person that guided him, from the station door, that they had to leave.

36. Defendant PPR Officer Rodríguez-Villot entered the station and without saying a word, struck Jose on his face, nose and left-hand middle finger with the metal notebook case, while Jose was still seating down. Jose's blood was spattered on his shirt and on the floor, as Jose began to bleed profusely.

8

Pérez-Soler, et al., v. Joseph González-Falcón, et al., civil #26-1415

37. As shown by the body cameras of Defendant PPR Officer González-González and Defendant PPR Officer De-Jesús-Diaz, Defendant PPR Officer Rodríguez-Villot then grabbed Jose by his dreadlocks with both fists closed and threw himself backwards pulling Jose's hair forcefully towards him and the floor.

38. Defendant PPR Officer López-Navarro came inside the station and participated in the assault, while Defendant PPR Officer Santana-Rosario, stood at the door and unholstered his taser gun which automatically alerted police Defendant PPR Officer González-González and Defendant PPR Officer De-Jesús-Diaz, who were sitting inside a patrol car right in front of the station.

39. Defendant PPR Officer González-González and Defendant PPR Officer De-Jesús-Diaz, ran inside the station and found Defendant PPR Officer Rodríguez-Villot grabbing Jose by his dreadlocks and Defendant PPR Officer López-Navarro holding Jose's right arm, while Jose had both of his hands on the floor to stop him from falling as Defendant PPR Officer Rodríguez-Villot was forcefully pulling him down grabbing his hair.

40. At the same time that Defendant PPR Officer González-González and Defendant PPR Officer De-Jesús-Diaz, entered the station, Jose was able to get free from Defendant PPR Officer Rodríguez-Villot and attempted to escape the assault, but then Defendant PPR Officer Rodríguez-Villot got up from the floor on his knees and grabbed Jose by the hair and shirt with his right hand, tearing his bloody shirt apart.

41. Then, Jose turned around and unsuccessfully attempted to punch Defendant PPR Officer Rodríguez-Villot, but Defendant PPR Officer Rodríguez-Villot, once again, threw himself backwards and shielded himself with his legs with steel toe boots, by pushing Jose away

9

Pérez-Soler, et al., v. Joseph González-Falcón, et al., civil #26-1415

from his with his extended legs and boot wearing feet. Therefore, Jose's punches did not even touch Defendant PPR Officer Rodríguez-Villot.

42. At that moment, without any warnings and contrary to PPR procedures, Defendant PPR Officer González-González fired three darts and Defendant PPR Officer De-Jesús-Diaz, shot two darts, using their taser guns, all of which hit Jose simultaneously, or in rapid succession.

43. PPR General Order 600-602.III.A.3 provides that the application of one dart is sufficient to control a person and arrest the person.

44. PPR General Order 600-602.III.A.4. prohibits two officers shooting darts to the same person simultaneously, or immediately one after the other, absent extraordinary circumstances.

45. PPR General Order 600-602.III.A.6. provides that shooting more than three darts at the same person may cause grave health risk or death.

46. Jose saw white. He then reacted and came back to consciousness.

47. He was placed on handcuffs. His face was covered in blood. His shirt was covered in blood and torn apart. His finger was also covered in blood.

48. On the other hand, although Defendant PPR Officer Rodríguez-Villot had Jose's blood on his clothes, he did not suffer a single scratch.

49. Defendant PPR Officer López-Navarro, Defendant PPR Officer Santana-Rosario, failed to intervene to stop Defendant PPR Officer Rodríguez-Villot from assaulting Jose.

50. Defendant PPR Officer Rodríguez-Villot, Defendant PPR Officer López-Navarro, and Defendant PPR Officer Santana-Rosario, failed to intervene to stop Defendant PPR Officer

10

Pérez-Soler, et al., v. Joseph González-Falcón, et al., civil #26-1415

González-González and Defendant PPR Officer De-Jesús-Diaz, from using excessive force by shooting five darts at Jose,

51. Defendant PPR Officer Rodríguez-Villot, Defendant PPR Officer López-Navarro, Defendant PPR Officer Santana-Rosario, Defendant PPR Officer González-González and Defendant PPR Officer De-Jesús-Diaz, failed to take Jose, immediately, to the Hoare hospital which was just steps away, in violation of PPR General Order 600-602.III.F

52. Four hours after the assault, Jose was taken to the hospital where he was diagnosed with a forehead laceration, forehead extracranial hematoma and five dart abrasions in his back.

53. At the hospital, the darts were removed from his back which caused severe pain to Jose, as they ripped his skin when removed. His left-hand middle finger needed six stitches.

54. After the hospital, Jose was taken back to the police station where he was placed in a cell overnight, until the next day, when he was taken to court, where Defendant PPR Officer Rodríguez-Villot, Defendant PPR Officer López-Navarro, Defendant PPR Officer González-González and Defendant PPR Officer De-Jesús-Diaz, filed criminal felony and misdemeanors charges against Jose. All of the charges were eventually dismissed because they were meritless.

55. Jose suffered the mutilation of his nose, which was displaced and causes difficulty breathing for which Jose needs corrective surgery. Additionally, Jose has developed a medical condition and has already been admitted twice to the hospital emergency ward because of problems with his heart, breathing and irregular heartbeat.

## V.   CLAIMS:

### Use of Excessive Force, Failure to Intervene, and Failure to Provide Emergency Medical Care, in Violation of The United States Constitution

56. The plaintiffs incorporate, herein, each of the aforementioned paragraphs.

<u>Pérez-Soler, et al., v. Joseph González-Falcón</u>, et al., civil #26-1415

57. Acting under color of state law, Defendant PPR Officer Rodríguez-Villot assaulted Jose by using a metal object to hit him in the face and left-hand middle finger causing profuse bleeding and then grabbing Jose by his hair and forcefully pulling him down to the floor.

58. Acting under color of state law, Defendant PPR Officer López-Navarro, and Defendant PPR Officer Santana-Rosario, assisted Defendant PPR Officer Rodríguez-Villot in assaulting Jose.

59. Defendant PPR Officer Santana-Rosario, and Defendant PPR Officer López-Navarro, failed to intervene to stop Defendant PPR Officer Rodríguez-Villot, from using excessive force.

60. Acting under color of state law, Defendant PPR Officer González-González and Defendant PPR Officer De-Jesús-Diaz, fired their taser guns in lethal doses, which exceeded the reasonable use, in violation of PPR rules.

61. Defendant PPR Officer Rodríguez-Villot, Defendant PPR Officer Santana-Rosario, and Defendant PPR Officer López-Navarro, failed to intervene to stop Defendant PPR Officer González-González and Defendant PPR Officer De-Jesús-Diaz, from using excessive force.

62. After Jose was shot, all of the officers that were present at the scene, including but not limited to Defendant PPR Officer Rodríguez-Villot, Defendant PPR Officer Santana-Rosario, Defendant PPR Officer López-Navarro, Defendant PPR Officer González-González and Defendant PPR Officer De-Jesús-Diaz, failed to take him to the hospital just steps away. The assault took place at 9:00 am, but it was not until 1:00 pm that Jose was taken to the hospital.

Pérez-Soler, et al., v. Joseph González-Falcón, et al., civil #26-1415

63. As a direct and proximate result of the aforementioned unlawful actions and omissions of PPR Officer Defendants, Jose suffered grievous bodily harm and was deprived of his right to be free from unreasonable seizures and the excessive use of force, in violation of the Fourth and Fourteenth Amendments of the United States Constitution.

64. As a direct result of the conduct of PPR Officer Defendants, and John Doe 1-15, Jose suffered an agonizing near death experience.

65. PPR Officer Defendants, and John Doe 1-5, acted with deliberate indifference to Jose's life, thus entitling him to an award of punitive damages against the individually named defendants.

66. PPR Officer Defendants, and John Doe 1-5, are liable to Jose for the payment of compensatory damages consequent to his suffering.

### Failure To Select, Train, Supervise, and Discipline, in Violation of The United States Constitution

67. The plaintiffs incorporate herein, each of the aforementioned paragraphs.

68. The type of incident that gives rise to the present complaint is not an isolated one in the PPR. Instances like this, of violation of civil rights, have occurred numerous times in the past and to this day, the PPR Supervisory Defendants have not taken adequate measures to correct it. They have failed to implement proper policies in order to stop or even deal with this type of police conduct.

69. The PPR Supervisory Defendants were delegated the power and authority to control the conduct of the PPR Officer Defendants, by the PPR, and failed to properly select, train, supervise and discipline their officers.

70. The PPR Supervisory Defendants were deliberately indifferent to the risk of harm to which they exposed citizens by failing to adequately select, train, supervise and/or discipline the officers under their command, in the use of force, and particularly the use of the taser guns.

71. The PPR Supervisory Defendants' failure to adequately select their officers caused that officers with a propensity for using excessive force, such as Defendant PPR Officer Rodríguez-Villot, Defendant PPR Officer Santana-Rosario, Defendant PPR Officer López-Navarro, Defendant PPR Officer González-González and Defendant PPR Officer De-Jesús-Diaz, joined the force, thereby exposing the citizens to a risk of harm.

72. The PPR Supervisory Defendants' failure to adequately train, supervise and discipline, their officers on the use of force caused that Defendant PPR Officer Rodríguez-Villot assaulted Jose, instead of taking his complaint, thereby exposing the citizens to a risk of harm.

73. The PPR Supervisory Defendants' failure to adequately train, supervise and discipline, their officers on the use of the taser gun caused that officers used the taser gun in an unreasonable manner that almost caused Jose's death, thereby exposing the citizens to a risk of harm.

74. In their failures, the PPR Supervisory Defendants recklessly and negligently disregarded known facts, or, alternatively, were deliberately indifferent to a substantial risk of harm to the citizens of which they knew or should have known, and their culpability caused the constitutional violation of Jose's rights.

75. As a direct and proximate result of the policies, customs, practices, and usages established, and/or followed, by the PPR Supervisory Defendants, as aforementioned, Jose suffered an agonizing near death experience.

Pérez-Soler, et al., v. Joseph González-Falcón, et al., civil #26-1415

**State law negligence claim**

76. The plaintiffs incorporate herein, each of the aforementioned paragraphs.

77. All of the acts, and/or omissions, of all of the defendants, as previously described, also amount to negligence, under Article 1536 of the Puerto Rico Civil Code. All of the defendants are liable for the damages suffered by the plaintiffs as a result of their negligence.

**State law claim for abuse of the law**

78. The plaintiffs incorporate herein, each of the aforementioned paragraphs.

79. The actions of defendants Defendant PPR Officer Rodríguez-Villot, Defendant PPR Officer López-Navarro, Defendant PPR Officer González-González and Defendant PPR Officer De-Jesús-Diaz, in filing criminal felony and misdemeanors charges against Jose which were eventually dismissed constitute abuse of law pursuant to Article 18 of the Puerto Rico Civil Code. Therefore, said defendants are liable to Jose for the damages resulting from their abuse of the law.

## VI.     Damages

80. Plaintiff Jose suffered serious mental and physical trauma during the assault and near-death experience. Jose suffered the open wound in his face and left middle finger, and the mutilation of his nose, which was displaced and causes difficulty breathing for which Jose needs corrective surgery. Jose also suffered the removal of the five darts and the six stitches in his finger. Additionally, Jose has developed a medical condition for which he has already been admitted twice to the hospital emergency ward because of problems with his heart, breathing and irregular heartbeat. Jose also suffered emotional and economic damages as a result of the abuse of process.

15

Pérez-Soler, et al., v. Joseph González-Falcón, et al., civil #26-1415

81. Judgment is sought for Jose for compensatory damages in the amount of, no less than, three million dollars ($3,000,000.00). Judgment is sought for punitive damages in the amount of ten million dollars ($10,000,000.00), plus costs of this action, attorney's fees, and such other relief, as the Court deems fair and appropriate under the circumstances. If plaintiff Jose prevails, he is entitled to an award of attorney fees pursuant to 42 U.S.C. section 1988.

82. Plaintiff Awilda Soler-Nieves suffered serious mental trauma, as a result of defendants' negligence. Judgment is sought for compensatory damages in the amount of, no less than, seven hundred and fifty thousand dollars ($750,000.00).

83. Plaintiff Jose Ismael Perez-Nieves suffered serious mental trauma, as a result of defendants' negligence. Judgment is sought for compensatory damages in the amount of, no less than, seven hundred and fifty thousand dollars ($750,000.00).

84. Plaintiffs request additional damages, pursuant to Article 18 of the Puerto Rico Civil Code which provides that when the acts, or omissions, constitute a crime, are fraudulent, or done with grave disregard for human life, security or the property that belongs to others, the court may impose an additional compensation which shall not be more than the sum awarded as compensation under Article 1536.

85. All defendants are solely and jointly responsible for the harm and pain suffered by the plaintiffs.

**WHEREFORE**, it is respectfully requested that having considered the allegations of this Complaint and the applicable law, the Court orders any relief that it seems just, proper, and fair.

In San Juan, Puerto Rico, this June 26th, 2026.

JROLMO LLC
261 Domenech, SJ PR 00918
787.447.9914/jrolmo1@gmail.com
***S/José R. Olmo-Rodríguez***

José R. Olmo-Rodríguez
USDC-PR 213405